126 So.2d 133 (1960)
Edward T. GRAHAM, Appellant,
v.
FLORIDA LEGISLATIVE INVESTIGATION COMMITTEE, Appellee.
Supreme Court of Florida.
December 19, 1960.
Tobias Simon and Howard W. Dixon, Miami, for appellant.
Mark R. Hawes, St. Petersburg, for appellee.
THORNAL, Justice.
Appellant Graham seeks reversal of an order of the circuit court upholding the validity of Chapter 59-207, Laws of Florida, 1959, and adjudging him guilty of contempt of court for refusing to answer certain questions propounded to him by the appellee Committee.
*134 We are requested to pass upon the constitutionality of Chapter 59-207, Laws of Florida, 1959. We must also determine whether various constitutional rights of appellant were violated by the order of the circuit court directing him to answer certain questions propounded by the appellee Committee.
Appellant Graham has appealed to us on two other occasions in connection with matters relating to the inquiry being pursued by the appellee. In re Petition of Graham, Fla. 1958, 104 So.2d 16; Gibson et al. v. Florida Legislative Investigation Committee, Fla. 1959, 108 So.2d 729.
At a hearing conducted by appellee Committee on November 4, 1959, the attorney for the Committee propounded to the appellant the following question: "Are you presently a member of the N.A.A.C.P.?" Other questions involving his possible N.A.A.C.P. membership were also asked. The one we quote is typical. The witness inquired as to the pertinency of the question. He was informed that the Committee desired to ascertain whether he was a member of the N.A.A.C.P. in order to follow with questions regarding possible N.A.A.C.P. membership by certain other individuals who had previously been identified as members of the Communist Party. Graham declined to answer the question on the ground that compulsory response would violate his First Amendment rights of free speech and assembly. He stated that if he should reveal membership in N.A.A.C.P. he would be exposed to social, economic, and perhaps physical abuses because of a community antagonism toward the organization and its program. The witness stated that the revelation of the names of the members of N.A.A.C.P. would result in disastrous reprisals against them in the form of threats of physical violence, loss of jobs, and harassment and annoyance in many forms. He asserted that the disclosure of membership in N.A.A.C.P. would cause the withdrawal from the organization by current members and the refusal of others to become members. This would result in substantially handicapping the organization in the accomplishment of its program. Ultimately N.A.A.C.P. would become completely non-existent in Florida. There was considerable testimony regarding the deterrent effect of compelled disclosure of membership in the N.A.A.C.P. The testimony that was offered and other testimony that was proffered tended to corroborate the statements of the appellant Graham regarding community attitude toward the organization and its members. The appellee Committee offered no testimony regarding the public need which would justify obtaining the requested information from this particular witness. When the witness declined to answer the Committee's inquiry he was cited by the circuit judge to show cause why he should not be adjudged in contempt of Court. Thereafter the matter was heard by the circuit judge and testimony was given or proffered to support appellant's concern over the compelled disclosure of association with the N.A.A.C.P. Again the respondent Committee offered no testimony to support the State's claim of a compelling need for this particular testimony from this particular witness. However, the circuit judge concluded that there was no competent reliable evidence showing any substantial risk of deterrent effect on the membership of N.A.A.C.P. that would result from disclosure of affiliation with the organization. He further found that "facts and circumstances of the proceeding at bar are such that the interest of the State is so grave, pressing, and compelling," that the constitutional rights of the witness should yield to the asserted power of the State to compel the disclosure of the desired information. The witness continued to decline to answer. He was sentenced to six months in jail and to pay a fine of $1,200.00 with an additional six months in jail upon failure to pay the fine. It is this judgment of contempt that we are now asked to reverse.
It is unnecessary to discuss at length the matter of the constitutionality of *135 Chapter 59-207, Laws of Florida, 1959. The circuit judge ruled correctly in upholding the validity of the act. We have approved his ruling in this regard in Gibson v. Florida Legislative Investigation Committee, Fla., 126 So.2d 129.
The asserted constitutional right of the appellant to decline to answer the question propounded causes much more concern. It should be remembered that the critical question simply was, "Are you a member of N.A.A.C.P.?" This witness was not interrogated as to any affiliation with the Communist Party or its organizational satellites. We are not here concerned with any effort to require the witness to respond to inquiries which would suggest any subversive activity on his part. In fact, the records compiled by the appellee Committee suggest that there is no adverse inference to be drawn from the Committee's interrogation of the witness Graham.
Although the circuit judge appears to have concluded that the record was devoid of believable evidence regarding the deterrent effect of compelled disclosure of N.A.A.C.P. membership, our own examination of the record certainly leads us to conclude that there was considerable testimony with reference to possible reprisals against any known active leader of N.A.A.C.P. Furthermore, the appellee Committee offered no testimony whatever to contradict the testimony of appellant's witness on this matter of the deterrent effect of disclosure.
We should bear in mind that the legislative justification for the authorization of this Committee and its investigatory powers is to inform itself on the matter of possible Communist infiltration into organizations which are active in the field of race relations. It is now well established that First Amendment rights will be subordinated to government action whenever it is clearly demonstrated that there is a pressing and compelling public justification for such action. However, it is equally well established that in order to justify subordinating the private right to public action, the announced public necessity must be established clearly and unequivocally. Otherwise, the guarantees of the First Amendment are adequate as a basis on which to resist encroachment by the government.
The necessity for disclosure of membership by this witness was not supported by the record. In fact, we have held in Gibson v. Florida Legislative Investigation Committee, Fla., 126 So.2d 129, that the information regarding affiliations of allegedly known Communists could be obtained from the witness Theodore R. Gibson. Admittedly, he is president of the Miami branch of the N.A.A.C.P. and has custody of the membership list. The Supreme Court of the United States has consistently held that the right of legitimate associational privacy is an aspect of the right to assemble and to speak freely in the advocacy of beliefs guaranteed by the First Amendment to the Constitution of the United States. Such guarantees constitute restrictions on State action under the due process clause of the Fourteenth Amendment to the Constitution of the United States. These individual freedoms can not be suppressed or impaired directly or indirectly by governmental action absent a showing that the State labors under a compelling and pressing need sufficient to justify encroachment on the individual freedom.
The burden is upon the State to prove the compulsion of the public need. It is now too late in the day to question the authoritative effect and broad scope of decisions of the Supreme Court of the United States that sustain the rights of individuals such as this appellant to associational privacy against asserted governmental action. Even if we personally disagree with these decisions, we must recognize our judicial obligation to apply them in appropriate situations as being the pronouncement of a higher authority on the subject. On the showing made by the instant record, the appellant was supported in his refusal to *136 answer the quoted inquiry by the decisions of the Supreme Court of the United States in Watkins v. United States, 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273; N.A.A.C.P. v. State of Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 and Bates v. City of Little Rock, 361 U.S. 516, 89 S.Ct. 412, 4 L.Ed.2d 480.
We have not overlooked the contended applicability of Barenblatt v. United States, 360 U.S. 109, 79 S.Ct. 1081, 1086, 3 L.Ed.2d 1115, as a judicial support for the rule of the trial judge. We think, however, that Barenblatt does not sustain the contempt order here. On the contrary, it demonstrates the rule which we have heretofore announced. The question which Barenblatt refused to answer was, "Are you now a member of the Communist Party?" He grounded his refusal on the First Amendment. He did not seek cover under the absolute protection of the Fifth Amendment against self-incrimination. The Supreme Court of the United States judicially recognized the close connection between the Communist Party and the violent overthrow of the established government. It took note of its consistent refusal to view the Communist Party as an ordinary political organization and recalled that it had upheld legislative enactments that controlled Communist activities. In other words, the Court judicially recognized the compelling public necessity to prevent the spread of Communism and its influence throughout this country. This compulsion was sufficient to subordinate Barenblatt's First Amendment claims to government action. In the instant case, while it is true that the appellee Committee is seeking out the locale of subversives, the immediate point in inquiry so far as appellant is concerned, is his associational relationship with an organization perfectly legitimate but allegedly unpopular in the community. In Barenblatt the claimed right of privacy was asserted to avoid revelation of membership in an organization whose primary objective was the violent overthrow of our government. The government's interest in preventing the accomplishment of the objectives of such an organization justified the encroachment on the asserted right of privacy. In the instant case the objectives of the organization are shown to be legitimate and there is an absence of any showing of a compelling public need that would support encroachment on appellant's constitutionally guaranteed private rights.
The order adjudging the appellant in contempt of Court is reversed.
It is so ordered.
THOMAS, C.J., and TERRELL, HOBSON, ROBERTS, DREW and O'CONNELL, JJ., concur.